LEMMON, Judge.
Alleging that he was injured in the course of his employment, Joe B. Chapman sued his employer, Summit Building, Inc. and its workmen’s compensation insurer for compensation benefits and medical expenses, and for attorney’s fees for defendants’ failure to pay benefits. The trial court found a total temporary disability and awarded compensation benefits not to exceed 300 weeks and medical expenses. Summit appealed, and Chapman neither appealed nor answered Summit’s appeal.
On appeal, defendants primarily contend that Chapman failed to prove that (1) he sustained an injury in the course of his employment and (2) his alleged disability was caused by injury sustained in a work-connected accident.
Chapman testified that the accident occurred on Friday, November 21, 1969 just after lunch, while he was performing his duties as a carpenter layout man and carpenter foreman for Summit. As he was inspecting a glass while standing on a scaffold about seven feet above the ground, his floot slipped and he fell, hitting his right side on the scaffold and then falling to the ground on his back and side.
There were no witnesses to the fall, but Chapman testified that as he rose from the ground holding his side, the two men working under him came around the building from the area where the glass was stored. Chapman informed them of the incident but continued to work.
When they returned from the job site to the plant at the end of the day, Chapman mentioned the incident to A. J. Melancon, the plant superintendent, who was busy distributing the weekly payroll checks. Thinking he had simply “wrenched his back” in the fall, he did not formally report the incident or seek medical attention.
On Monday, Chapman reported to the plant as usual and then went to the job site. After two or three hours, the pain worsened, and Chapman informed his coworkers that he was leaving to consult a doctor and would return. He went to *664 Charity Hospital, but left because of a long waiting period and went to his apartment where he took aspirin and rested in bed briefly. He returned to the job at 1:30.
On Tuesday and Wednesday, he did not report to work, but because a four-day Thanksgiving holiday was to begin on Thursday, he went to the plant on Wednesday afternoon to receive Monday’s wages. Noticing that the amount of the check was less than he expected, Chapman learned from the secretary that Charles Green, Summit’s president, instructed her to pay him for only three hours of work for Monday rather than eight hours.
After the holiday Chapman did not return to work on the following Monday or Tuesday, but did report for duty on Wednesday morning (December 3), “hurting but willing to work”. He was instructed not to go to the job site, but to wait at the plant for Green. When Green arrived, he paid Chapman for the disputed five hours and fired him.
A workmen’s compensation claimant must prove the occurrence of an accident by a preponderance of the evidence as in any other case. The accident can be proved by the claimant’s testimony if supported by the surrounding circumstances. Lewis v. Celotex Corporation, 222 So.2d 647 (La.App. 4 Cir. 1969).
Summit contends that Chapman’s failure to immediately report the accident, together with the fact that no one else actually saw the incident occur, are circumstances that cast doubt and suspicion that there was in fact an accident in the course of employment. On the other hand, courts cannot penalize a sincere employee who continues to work in pain or who thinks that the injury is inconsequential, and who later seeks medical aid from physicians or hospitals other than those recommended by his employer.
The trial judge believed Chapman’s testimony, which was corroborated by Melan-con to the extent that he admitted that Chapman informed him of the accident on the following Monday, and he reported this to Mrs. Green. While Green asserted that Chapman did not tell him of the accident until the termination of employment, he admitted that Chapman’s co-worker (whom Chapman subpoenaed but who did not respond to the summons) had informed him on the Monday following the accident that Chapman had left the job site to seek medical attention for the injury. The company therefore knew within a few days of Chapman’s claim of an accidental injury, even though he had failed to properly report it.
After considering the entire record, we find no manifest error in the trial judge’s conclusion that the accident occurred in the course of Chapman’s employment.
Chapman’s first medical examination after the accident was on December 3, the date that he was terminated, and the appointment was arranged by Summit. The doctor diagnosed traumatic neuritis, traumatic pleurisy and contusions and accordingly prescribed medications. The doctor saw Chapman nine times over the next five weeks, but first noted on December 22 that Chapman complained of tingling in the hip and leg and of pain in the back of the head. However, the doctor was primarily concerned with the rib injury and the symptoms thereof. He released Chapman for light duty on January 5, 1970.
On January 16, 1970 Chapman next consulted a general surgeon, who' diagnosed possible rib fractures and irritation of the intracostal nerves generally associated with a rib fracture. This was treated with physiotherapy with good results. This doctor attributed Chapman’s complaints of severe back pain to arthritis and prescribed medications, but because of the x-ray re *665 port and the continued complaints, he referred Chapman to an orthopedic specialist.
The orthopedist found a complete collapse between two intervertebral discs with severe degenerative arthritis. He prescribed the use of medications and a brace, but he testified that if this did not solve the problem, a spinal fusion should be performed to rehabilitate the patient so that he can be gainfully employed. He further testified that the arthritic condition could have existed without Chapman’s knowledge and could have been aggravated by trauma.
Difficult cases are often presented where a claimant with a back injury is found to have a pre-existing, but previously dormant arthritic condition. Generally, the testifying physician did not examine the claimant prior to the trauma and cannot conclusively testify regarding the degree, if any, of aggravation caused by that trauma. A claimant must therefore strongly rely on the circumstance that, until the very date of the accident, he was in good health and capable of performing strenuous labor.
In this case the testimony and Chapman’s previous work record establish this circumstance. Chapman had done heavy construction work all of his life and was 54 years old at the time of the accident. He had previously worked for Summit and had worked steadily there for six months prior to the accident. Lay testimony was offered to show his previous condition of good health. In contrast, he is now in poor health and unable to perform heavy duty. We therefore believe that the causal relationship between the disability and the accident has been sufficiently established. See Booker v. Phoenix Insurance Company, 124 So.2d 246 (La.App. 2 Cir. 1960).
Accordingly, the judgment is affirmed at appellant’s costs.
Affirmed